**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Bridget Gasparik</u>

   v.                                                          Case No. 16-cv-147-AJ
                                                                Opinion No. 2016 DNH 215
<u>Federal National Mortgage Association</u>


**O R D E R**

In an action removed from state court, the plaintiff, Bridget Gasparik, alleges that Federal National Mortgage Association ("Fannie Mae") violated state and federal law when it foreclosed upon a home in Danbury, New Hampshire.  Doc. no. 13.  Fannie Mae moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Doc. no. 14.  The plaintiff objects.  Doc. no. 15.  For the following reasons, Fannie Mae's motion is granted.

**Standard of Review**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations . . . set forth a plausible claim upon which relief may be granted."  <u>Foley v. Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 71 (1st Cir. 2014) (citation and quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

The scope of the court's analysis on a Rule 12(b)(6) motion is generally limited to "facts and documents that are part of or incorporated into the complaint . . . ." GE Mobile Water, Inc. v. Red Desert Reclamation, LLC, 6 F. Supp. 3d 195, 199 (D.N.H. 2014) (quoting Rivera v. Centro Medico de Turabo, Inc., 575 F.3d, 10, 15 (1st Cir. 2009)); see also Fed. R. Civ. P. 12(d). As an exception to this rule, the First Circuit permits trial courts to consider "documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiff's claim; and documents sufficiently referred to in the complaint" without converting a motion to dismiss into one for summary judgment. Id. (brackets omitted) (quoting Rivera, 565 F.3d at 15).

## Background

Accepting the factual allegations set forth in the plaintiff's complaint as true, the relevant facts are as follows.

On July 31, 2006, the plaintiff's father, Philip Catalano, executed a promissory note in the amount of $208,050.00 to First Call Mortgage Company, Inc. ("First Call").  Doc. no. 2-2.  Catalano alone signed the note.  Id. at 3.  The note secured a mortgage on the property central to this case, located at 440 Route 4, Danbury, New Hampshire.  Doc. no. 2-3.  Catalano, the plaintiff, and Rudy Gasparik are named as mortgagors, and all three signed the mortgage.  Id. at 2, 14.  First Call is named as the lender, and the Mortgage Electronic Registration Systems, Inc. ("MERS") is named as mortgagee as a nominee for First Call's successors and assigns.  Id. at 2.  The mortgage was recorded with the Merrimack County Registry of Deeds on August 2, 2006.  Id. at 2.  On March 20, 2009, MERS assigned the mortgage to Fannie Mae.  Doc. no. 2-4, at 2.  This assignment was recorded with the Merrimack County Registry of Deeds on March 26, 2009.[1]

---

[1] The note, mortgage, and assignment of mortgage are attached as exhibits to Fannie Mae's original motion to dismiss.  See doc. no. 2.  The plaintiff successfully moved to amend, which resulted in the original motion to dismiss being denied without prejudice pursuant to Local Rule 15.1(c).  Fannie Mae has not reattached these documents to its present motion, but does make reference to them therein.  See, e.g., doc. no. 14-1, at 2, 3.  As these documents remain in the record, the plaintiff does not dispute their authenticity, and, at least as to the mortgage and assignment of mortgage, they are publicly recorded with a registry of deeds, the court will consider them in its present analysis.  See GE Mobile Water, Inc., 6 F. Supp. 3d at 199.

Catalano, who is elderly, resides on the property. The plaintiff is responsible for his care. The plaintiff was also responsible for paying the mortgage on the property, but fell behind on these payments. Once the mortgage was in default, Fannie Mae commenced foreclosure proceedings and scheduled a foreclosure sale. The plaintiff reached out to Fannie Mae seeking a resolution short of foreclosure. Fannie Mae indicated that the plaintiff needed to pay the full amount in arrears in order to cancel the foreclosure sale. The plaintiff indicated that she would not be able to make any such payment until after the scheduled date for the foreclosure sale, but offered to pay the full arrearage at that time. Fannie Mae refused to postpone the foreclosure sale. The plaintiff offered to make a payment via credit card, which Fannie Mae also refused.

On March 14, 2016, the plaintiff filed a petition in state court seeking, inter alia, an ex parte order restraining Fannie Mae from foreclosing on the property. Doc. no. 6, at 27. The state court denied the plaintiff's petition on an ex parte basis and scheduled a hearing for March 22, 2016. Id. at 19. Following the hearing, the state court preliminarily enjoined Fannie Mae from conducting the foreclosure sale. Id. at 16. On April 14, 2016, Fannie Mae removed this matter to this court, see doc. no. 1, and moved to dismiss for failure to state a claim, doc. no. 2. The plaintiff moved to amend, doc. no. 10,

4

which the court granted over Fannie Mae's objection. Fannie Mae thereafter filed the present motion, seeking the dismissal of the plaintiff's amended complaint.

## Discussion

The plaintiff's amended complaint is comprised of seven counts. Counts I, II, and V, hereinafter the "state tort claims," respectively allege negligence, negligent misrepresentation, and negligent infliction of emotional distress. Count III alleges a breach of the covenant of good faith and fair dealing. Count IV alleges a violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann ("RSA") § 358-A. Count VI alleges a violation of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2601, et seq. Finally, Count VII addresses Fannie Mae's legal standing to foreclose on the property.

Fannie Mae moves to dismiss the amended complaint in its entirety. First, Fannie Mae argues that the state tort claims are barred by the economic loss doctrine. Next, Fannie Mae contends that it has not violated the covenant of good faith and fair dealing both because it had no duty to delay the foreclosure in order to give the plaintiff time to seek loss mitigation and because no such violation can be premised solely upon the fact that it was exercising its bargained-for right to

foreclose.  Third, Fannie Mae contends that it is exempt from the CPA and, alternatively, that the plaintiff has not alleged any conduct that could sustain a CPA claim.  Similarly, Fannie Mae argues that the plaintiff is not a borrower as defined by RESPA and that she has failed to allege any pecuniary harm arising from a purported RESPA violation.  Lastly, Fannie Mae contends that the plaintiff is barred by RSA § 479:25 from raising her standing claim.  The plaintiff objects to these arguments on various grounds.

## I. State Tort Claims

The court turns first to the plaintiff's state tort claims.  As noted, Fannie Mae's primary argument is that these claims are barred by the economic loss doctrine.  The court agrees.

Under New Hampshire law, the contractual relationship between a lender and a borrower typically precludes recovery in tort.  See Moore v. Mortg. Elect. Registration Sys., Inc., 848 F. Supp. 2d 107, 133 (D.N.H. 2012) (citing Wyle v. Lees, 162 N.H. 406, 409-10 (2011)).  This principle, known as the "economic loss doctrine," is premised on the theory that "[i]f a contracting party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain."  Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 794 (2007) (quoting Tietsworth v. Harley-Davidson, Inc.,

677 N.W.2d 233, 242 (Wis. 2004)).

The economic loss doctrine is not absolute. The New Hampshire Supreme Court ("NHSC") has recognized that "a contracting party may be 'owed an independent duty of care outside the terms of the contract.'" Moore, 848 F. Supp. 2d at 133 (quoting Wyle, 162 N.H. at 410).[2] "Where the existence of such a duty is claimed, though, the burden is on the borrower . . . to prove the lender's voluntary assumption of activities beyond those traditionally associated with the normal role of a money lender." Id. (internal quotation marks and brackets omitted) (quoting Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759 (1989)). The plaintiff has not raised any such argument in the present case.

Instead, the plaintiff contends that the economic loss doctrine should not apply in the first instance because she never entered into a contractual relationship with Fannie Mae. This argument is unpersuasive. At the time the mortgage was

---

[2] For instance, the NHSC has held that "a lender owes a borrower a duty not to disburse its loan funds without authorization, Lash v. Cheshire Cnty. Sav. Bank, Inc., 124 N.H. 435, 438–39 (1984), and that a mortgagee, in its role as seller at a foreclosure sale, owes a duty to the mortgagor 'to obtain a fair and reasonable price under the circumstances.' Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541 (1985)." Moore, 848 F. Supp. 2d at 133.

executed, MERS was named as mortgagee thereunder. Doc. no. 2-3 at 2. The mortgage expressly contemplates the assignment of the mortgage by MERS, see id. at 2, 12, and MERS indisputably assigned the mortgage to Fannie Mae prior to the foreclosure, see doc. no. 2-4. The NHSC has approvingly cited Restatement (Second) of Contracts § 317, see Dillman v. Town of Hooksett, 153 N.H. 344, 346-48 (2006), which allows for the liberal assignment of contractual rights under common law unless 1) such assignment "would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him"; 2) "the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy"; or 3) "assignment is validly precluded by contract." Restatement (Second) of Contracts § 317(a)(2). None of these conditions is present here. Thus, MERS validly assigned its rights as mortgagee to Fannie Mae, and privity of contract existed between the plaintiff and Fannie Mae at the time of the foreclosure.[3]

The plaintiff next argues that, privity notwithstanding,

---

[3] And even if privity did not exist, the NHSC has suggested, citing considerable authority from other states, that the economic loss doctrine still generally bars recovery in a tort for purely economic harm. See Plourde Sand & Gravel, 154 N.H. at 795-96.

the economic loss doctrine should not apply because a "special relationship" exists between the plaintiff and Fannie Mae. The NHSC, like many courts, has recognized that a plaintiff can recover for purely economic harm "where there is a 'special relationship' between the plaintiff and the defendant that creates a duty owed by the defendant . . . ." Plourde Sand & Gravel, 154 N.H. at 795 (formatting and citation omitted). Beyond conclusorily stating that Fannie Mae "enjoys a 'special relationship' in [its] role as mortgage servicer", doc. no. 15, at 2, however, the plaintiff has provided no basis for concluding that her relationship with Fannie Mae was anything other than purely contractual. Moore, 848 F. Supp. 2d at 133 (citing Ahrendt v. Granite Bank, 144 N.H. 308, 311 (1999)) ("[U]nder New Hampshire law, the relationship between a lender and borrower is contractual in nature . . . ."). The court can identify no precedent supporting such a conclusion. Thus, this argument too must fail.

Finally, the plaintiff argues that her negligent misrepresentation claim is not barred because Fannie Mae is "in the business of supplying information." Doc. no. 15, at 2. The NHSC has recognized such an exception to the economic loss doctrine. Plourde Sand & Gravel, 154 N.H. at 795 (citation omitted).

One who, in the course of his business, profession or

> employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Plourde Sand & Gravel, 154 N.H. at 799 (quoting Restatement (Second) of Torts § 552(1)). This exception "is narrower than the traditional tort claim" for negligent misrepresentation. Id. (citation omitted).

Here, the plaintiff has not adequately pleaded the elements of the negligent misrepresentation exception. Assuming arguendo that Fannie Mae is "in the business of supplying information," the plaintiff has pleaded no facts from which the court can reasonably infer that Fannie Mae supplied her with false information. Nor has she pleaded any facts suggesting justifiable reliance on her part.

Yet even if the plaintiff had pleaded such facts, recovery would nonetheless be barred by the economic loss doctrine. The First Circuit, interpreting NHSC precedent, has read this exception to apply "only [to] those representations that precede the formation of the contract or that relate to a transaction other than the one that constitutes the subject of the contract . . . ." Schaefer v. Indymac Mortg. Servs., 731 F.3d 98, 109 (1st Cir. 2013) (citing Wyle, 162 N.H. at 411-12). As Fannie Mae was assigned the mortgage in this case, any purported

10

misrepresentation on Fannie Mae's part necessarily occurred <u>after</u> the mortgage was formed. And misrepresentations made in the context of foreclosure proceedings inextricably relate to a transaction central to the underlying contract, in this case the mortgage itself. Thus, consistent with established First Circuit precedent, the negligent misrepresentation exception cannot apply in the present context.

In sum, the economic loss doctrine bars the plaintiff from recovering on any of her state tort claims. Accordingly, Counts I, II, and V are dismissed.

## II. Good Faith and Fair Dealing

The court next considers Count III of the plaintiff's amended complaint, her claim for breach of the covenant of good faith and fair dealing. Fannie Mae contends that this claim must be dismissed both because it had no duty to provide the plaintiff with the opportunity to seek loss mitigation prior to foreclosure and because no violation of this covenant can be premised solely upon the exercise of a bargained-for right. Again, the court agrees.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with each other." <u>Birch Broad, Inc. v. Capitol Broad. Corp.</u>, Inc., 161 N.H. 192, 198, 13 A.3d 224 (2010). The NHSC applies this covenant in three contexts: 1) contract formation; 2) termination of at-will

11

employment agreements; and 3) limitations of discretion in contractual performance. J & M Lumber & Const. Co. v. Smyjunas, 161 N.H. 714, 724 (2011). The plaintiff contends that Fannie Mae violated the covenant in at least two ways: 1) "[b]y keeping [her] uninformed and off track with her [loan] modification application"; and 2) "[b]y ignoring [her] ability to pay and keeping [her] waiting to achieve [a] work out resolution while [Fannie Mae] continued to add interest, late payments[,] and other fees to [her] loan." Amend. Compl., doc. no. 13, ¶ 64. Based on these allegations, the court assumes that the plaintiff alleges that Fannie Mae abused its discretion under the mortgage in the manner in which it pursued foreclosure.

As discussed above, there is privity of contract between the parties.[4] As such, the plaintiff's good faith and fair dealing claim turns on three questions: 1) whether the agreement allows or confers discretion on Fannie Mae to deprive the plaintiff of a substantial portion of the benefit thereunder; 2) whether Fannie Mae exercised its discretion reasonably; and 3)

---

[4] The plaintiff appears to contend in her amended complaint that she and Fannie Mae entered a subsequent contract to work toward a loan modification. See Amend. Compl. §§ 58-62. She has not, however, alleged any facts to support this legal conclusion. As such, the court need not assume its truth. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 10 (1st Cir. 2011) (citation omitted) ("Unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth.").

12

whether Fannie Mae's abuse of discretion caused the damage complained of.  Moore, 848 F. Supp. 2d at 129 (citations omitted).  The court considers each of these questions in turn.

As to the first question, the mortgage here expressly grants Fannie Mae the authority to foreclose upon the property in the event of default.  Doc. no. 2-3, at 13; see also RSA § 479:19 et seq.  The court therefore concludes that the mortgage allows or confers on Fannie Mae the discretion to deprive the plaintiff of her rights to the property.

Turning, then, to the second question, the court finds that Fannie Mae exercised its discretion reasonably.  "Courts have generally concluded . . . that the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan."  Moore, 848 F. Supp. 2d at 130.  "These decisions are consistent with New Hampshire law that the applied covenant cannot be used to rewrite a contract to avoid harsh results."  Id. (citation omitted).  This court "has time and again held that lenders have no duty absent explicit contractual language to modify a loan or forbear from foreclosure."  Towle v. Ocwen Loan Servicing, LLC, No. 15-CV-189-LM, 2015 WL 4506964, at *2 (D.N.H. July 23, 2015).  Here, there is no language in the mortgage imposing such a duty upon Fannie Mae.  There was therefore no requirement that Fannie Mae restructure the mortgage or otherwise forebear from foreclosing

while the plaintiff pursued loan modification or acquired funds to pay the arrearage.

The plaintiff arguably contends that Fannie Mae improperly refused payment from the plaintiff for the amount in arrears. This contention is unavailing for at least two reasons. First, as noted, Fannie Mae had no duty to postpone the foreclosure in order to allow the plaintiff to make such a payment. Id. Accordingly, any contention that Fannie Mae violated the covenant by failing to wait for the plaintiff must fail. And while the mortgage does grant the borrower a right to reinstate the mortgage by making a full payment of the arrearage and meeting other conditions, it only contemplates certain forms of payment, none of which are by credit card. Doc. no. 2-3, at 12. Thus, Fannie Mae was fully within its rights to decline this form of payment.

As Fannie Mae did not abuse its discretion under the mortgage in the course of the foreclosure proceedings, the court need not consider the third question. The plaintiff has not stated a viable claim for breach of the covenant of good faith and fair dealing. Accordingly, Count III is dismissed.

### III. CPA

The court next considers the plaintiff's CPA claim. The plaintiff contends that Fannie Mae violated the CPA by: 1) "[r]efusing to consider reasonable foreclosure alternatives"; 2)

"[r]efusing to [p]ostpone [f]oreclosure to consider commercially reasonable alternatives"; and 3) "[f]ail[ing] to [e]xhaust [a]dministrative [r]emedies prior to embarking on [f]oreclosure." Amend. Compl. ¶ 68. Fannie Mae contends that it is exempt from the CPA and, alternatively, that the plaintiff has not identified any conduct that would give rise to a CPA violation. The court is persuaded by both arguments.

The CPA exempts from its purview "[t]rade or commerce that is subject to the jurisdiction of . . . federal banking or securities regulators who possess the authority to regulate unfair or deceptive trade practices." RSA § 358-A:3, I. The director of the Federal Housing Finance Authority ("FHFA") has "general regulatory authority" over Fannie Mae "to ensure that the purposes of [12 U.S.C. § 4511 et seq.], the authorizing statutes, and any other applicable law are carried out." 12 U.S.C. § 4511. The scope of this authority is broad, and can reasonably be construed to reach unfair or deceptive trade practices. See 12 U.S.C. § 4513(a). Accordingly, Fannie Mae is subject to the jurisdiction of federal banking and securities regulators such that the CPA does not apply.

Even if the CPA did apply, however, the plaintiff has still not stated a viable claim thereunder. It is unlawful under the CPA "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any

15

trade or commerce within [New Hampshire]." RSA § 358-A:2. RSA § 358-A:2 contains a non-exhaustive list of conduct amounting to a CPA violation. See id. § 358-A:2, I-XVI. Conduct not specifically delineated can nonetheless give rise to a CPA violation if it meets the so-called "rascality" test: i.e., it "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." ACAS Acquisitions (Precitech) Inc. v. Hobert, 155 N.H. 381, 402 (2007) (citation omitted).

Here, the plaintiff has not specified any subsection of RSA § 358-A:2 that she believes Fannie Mae violated. She instead alleges general violations of the CPA based on the conduct noted above. As previously discussed, however, Fannie Mae was under no obligation to consider alternatives to foreclosure or otherwise forebear from foreclosure in order to allow the plaintiff additional time to either modify the mortgage or pay the arrearage. Nor has the plaintiff pleaded facts from which the court could reasonably infer that Fannie Mae failed to exhaust administrative remedies in a matter that would violate the CPA. Simply put, even when taken as true, Fannie Mae's alleged conduct in this case does not rise to the level of rascality to sustain a CPA claim.

Accordingly, Count IV of the plaintiff's amended complaint is dismissed.

**IV.   RESPA**

The court turns to the plaintiff's RESPA claim.  The plaintiff alleges that Fannie Mae failed to respond to numerous requests to avoid foreclosure, in violation of 12 U.S.C. § 2605(k).  Fannie Mae contends that the plaintiff does not have standing to bring a RESPA claim because she did not sign the promissory note.  The court need not reach this argument, however, because even if the plaintiff did have standing to bring a RESPA claim, she has failed to allege a violation of 12 U.S.C. § 2605(k).

Under RESPA, the servicer of a mortgage "shall not fail to take timely action to respond to a borrower's requests to correct errors relating to . . . avoiding foreclosure . . . ." 12 U.S.C. § 2605(k)(1)(C).  Though the plaintiff asserts that Fannie Mae failed to respond to "numerous requests . . . to avoid foreclosure," Amend. Compl. § 83, she has not alleged any facts to support this assertion.  On the contrary, the plaintiff's amended complaint is replete with allegations that Fannie Mae did in fact respond to the plaintiff's requests to avoid foreclosure, and each time refused to do so.  The court therefore views this as "an example of a conclusory statement that, though presented as an assertion of fact, simply describes [a] legal conclusion." Ocasio-Hernandez, 640 F.3d at 10.  In this context, the legal conclusion is that Fannie Mae violated

17

RESPA.

Even were the court to construe this assertion as an allegation of fact, however, the plaintiff's RESPA claim would still fail.  Subsection 2605(k)(1)(C) does not make it unlawful to fail to respond to <u>any</u> requests to avoid foreclosure, but, as relevant here, to "requests to <u>correct errors</u> relating to[,]" among other things, "avoiding foreclosure."  <u>Id.</u> (emphasis added).  The plaintiff has nowhere asserted that she made a request to correct an error relating to avoiding foreclosure, let alone that Fannie Mae failed to respond to such a request.  This is fatal to her RESPA claim.

Accordingly, Count VI of the plaintiff's amended complaint is dismissed.

## V.  **Standing to Foreclose**

Finally, the court turns to Count VII of the plaintiff's amended complaint, which addresses Fannie Mae's legal standing to foreclose on the property.  The plaintiff suggests that Fannie Mae may not have standing to foreclose on the property because it may not be able to produce the promissory note.  This argument fails for several reasons.

First, the plaintiff has not alleged any concrete harm, and merely speculates that Fannie Mae's standing to foreclose might become an issue at some point in the future.  The plaintiff has accordingly failed to plead any injury-in-fact that this court

may redress. See Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016) (discussing the requirements of Article III standing).

Next, Fannie Mae has in fact produced the note in question, as evidenced by the note's attachment as an exhibit to Fannie Mae's original motion to exist.

Finally, to the extent that the plaintiff attempts to argue that Fannie Mae does not have the authority to foreclose because it is not the current holder of the promissory note, this argument also fails. The NHSC has held that when MERS is acting as nominee to the lender, as is the case here, see doc. no. 2-3, at 2, an agency relationship exists between MERS and the lender. See Bergeron v. N.Y. Cmty. Bank, 168 N.H. 63, 70 (2015). Under such circumstances, the assignee of MERS's interests as nominee has the authority to foreclose regardless of whether it holds the note at the time of foreclosure. Id. at 70-71. It is therefore immaterial whether Fannie Mae currently holds the note.

Accordingly, Count VII of the amended complaint must also be dismissed.

## Conclusion

In sum, the plaintiff's amended complaint, doc. no. 13, fails to state any plausible claim for relief. Fannie Mae's

motion to dismiss, doc. no. 14, is granted.  The clerk of court is directed to enter judgment accordingly and close the case.

    SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

December 1, 2016

cc:   Keith A. Mathews, Esq.
      David D. Christensen, Esq.
      Michael R. Stanley, Esq.